HENRY MANSFIELD, Administrator, etc.

*v.*

ANDREW HOAGLAND.

CONSIDERATION—*whether a further consideration necessary.*   Where a sale of land has been made under a judgment, and a certificate of purchase issued to the plaintiff therein, who afterwards assigns the judgment to a third person, for a valuable consideration, upon an assignment of the certificate of purchase to the assignee of the judgment, subsequent to the assignment of the judgment, and to carry out the original intention of the parties, no further consideration is necessary to support the transaction.

APPEAL from the Circuit Court of Peoria county ; the Hon. S. D. PUTERBAUGH, Judge, presiding.

This case was before the court, at the January term, 1868, when the decree of the court below was reversed, and the cause remanded for further proceedings.   It is reported in 46 Ill. 359, where the facts will be found sufficiently set forth in the opinion of the court.   Upon a re-trial in the court below,

additional evidence was introduced, in reference to the question whether the assignment of the judgment and certificate of purchase by Joseph C. Hoagland to Andrew Hoagland was fraudulent. A final decree was rendered on the 17th of July, 1869, reciting that the cause came on upon the bill as amended, the answer of Andrew Hoagland and replications, the exhibits and proofs, and the court being advised, found the equities to be with the defendant, Andrew Hoagland.

It was ordered that the bill, so far as it affected Andrew Hoagland, be dismissed; that the decree of March 15, 1859, and all proceedings under it, so far as they affected the rights of Andrew Hoagland, be vacated and set aside; that the deed of the master in chancery to Joshua J. Moore, so far as it affects the rights and interests of Andrew Hoagland, be set aside, and he restored to all his rights as if no such deed had been made, and that the master execute a deed to Andrew Hoagland upon demand, reconveying the premises, without prejudice to the rights of subsequent purchasers from Andrew Hoagland. And it was further ordered, that Andrew Hoagland recover his costs against the complainant, to be paid in due course of administration.

From that decree the complainant appealed.

Messrs. GOUDY & CHANDLER, for the appellant.

Mr. D. McCULLOCK, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was before this court at a previous term, and is reported in 46 Ill. 359. It was then held, that the judgment against Joshua J. Moore, was valid and binding on him, and as his land had been sold under it, an innocent purchaser or an assignee for a valuable consideration from the purchaser, could not be compelled to surrender the land because the judgment, in equity, might have belonged to other parties; that

if the *cestuis que trust* permitted a person wrongfully to obtain a judgment in his name, when it should have been in theirs, they have no right to require an innocent person to suffer the consequences of their carelessness; that they can only look to the person who wrongfully obtained the judgment in his name, or wrongfully used it for his own benefit; that under the facts then before the court, the heirs or administrator of Joseph I. Moore must look to Joseph C. Hoagland for the amount he received under the judgment, as by his default he admitted that it was for their benefit.

It was also held, that as Andrew Hoagland denied the allegation that the assignment was fraudulent, and having alleged that it was taken in good faith and for value, and the evidence failing to disprove his answer and failing to connect him with the fraud charged in the bill, he was to be held an innocent purchaser for a valuable consideration; that his title could not be divested on account of any equities that existed in the maker of the note, or the heirs of Joseph I. Moore of which he had no notice. But since the case was then before the court, further evidence has been taken, and the cause again tried in the court below, and it is insisted that the court should, on the evidence thus before it, have decreed that Andrew Hoagland's title was fraudulent, and granted the prayer of the bill.

It now appears that Joseph C. Hoagland on the 4th day of August, 1857, assigned the judgment to Andrew Hoagland, by an instrument in writing which was acknowledged before a notary public, in the city of New York. This assignment only professed to transfer the judgment, and makes no allusion to the certificate of purchase issued by the marshal to Joseph C. Hoagland, bearing date on the 1st of September, 1857, almost a year before the formal assignment of the judgment was made.

Afterwards, about the 8th day of August, 1857, Joseph C. Hoagland being in Lewistown in this State, was arrested on a writ of *ne exeat*, and to procure bail for his appearance, he produced the certificate of purchase which was in his possession, and assigned it to Andrew Hoagland and gave it to L.

W. Ross, with a power of attorney, authorizing him to control the land, or money if it should be redeemed, and Ross then became bail for his appearance to answer the writ. Ross and Shope both testify that Andrew Hoagland was not there at that time. It also appears that Joseph C. Hoagland was then insolvent. Andrew testified that he had never seen the certificate of purchase for this tract of land, and did not know whether or not it was assigned to him. He says he has no distinct recollection that the judgment was assigned to him but presumes it was, as an attorney was employed to prepare papers, and he gave to Joseph C. Hoagland a power of attorney to collect the judgment. He had no recollection of the amount paid, but says he thinks he had loaned Joseph C. money before that time, but was unable to state the amount. Said he could not state the amount paid, but that he made payments at different times; that he held notes against Joseph which he then gave up to him; that he was unable to say how much he was to give for the judgment, as they were brothers-in-law and did business loosely, and he kept no account of the money paid or of the transaction.

Joseph Hoagland in his testimony, does not speak of having given Andrew his notes for borrowed money previous to the assignment, or then being indebted to him. He is more definite as to the sums of money which they both say were afterwards paid by Andrew. He gives amounts and places where the money was paid. Although it may be that their accounts of the transaction are not so full and specific as we should have expected had the testimony been given soon after the assignment was made, still, it is not so inconsistent with a fair transaction as to induce us to wholly disregard their testimony and set aside the conveyance, independent of other evidence. And when we turn to the other evidence in the case, we find it so clearly contradictory that we are wholly unable to reconcile it, or to learn any thing satisfactory of the truth of the case.

It is true the assignment of the certificate was not endorsed until near a year after the transfer of the judgment, but it

was made to carry out the original intention of the parties. If such had not been the case, we can readily suppose that the assignment would have been directly to Ross. It may be asked, why he would use another person's certificate of purchase for his own use, but it must be remembered that he was in custody, and unable to obtain his release otherwise; although not right, he would, perhaps, be strongly tempted to take such a liberty with a brother-in-law, with whom he was on friendly and intimate terms.

. Both Joseph and Andrew swear that they were not aware of the fact that this quarter of land had been sold under the execution at the time the transfer of the judgment was made; and, as they lived in other States and the collection of the judgment was entrusted to an attorney, we have no doubt this was true.

. That the actual assignment of the certificate of purchase was proved to have been made after the assignment of the judgment, is true, and it was also shown that no money was then paid as a consideration, but it is evident that there was no intention to reserve any portion of the judgment, or avails thereof already received from it. Suppose the entire judgment had been collected and in the hands of the attorney at the time, would any one have doubted that Andrew was entitled to receive it? We presume not. And if so, why did not the certificate of purchase, in equity, pass to him by this assignment? As the intention was to transfer the judgment, and all the money recovered by it if collected, no reason is perceived why Andrew should not have the benefit of the certificate of purchase, as well as the balance of the judgment. When Joseph, therefore, wrote out the assignment on the certificate of purchase, he did no more than chancery would have compelled him to do. He was only carrying out the intention of himself and Andrew when the judgment was assigned.

We are clearly of the opinion that any further consideration was unnecessary to be paid to support the assignment of the certificate of purchase.

As to whether that assignment was only colorable, we think that appellant, even with the additional evidence introduced on the last trial, has failed to prove that fact.   Both Joseph and Andrew swear that the assignment was *bona fide* and that a sufficient consideration was paid to support the transaction. It is true that Joseph seems to have become insolvent not a great while afterwards, but that would probably afford an inducement to pay a brother-in-law any sum he may have owed him, and to have obtained means out of a claim that, it is said, was regarded doubtful, and at best likely to require time and expense for its collection. The whole case considered, we do not see that appellants have established that the assignment of the judgment or the certificate of purchase was fraudulently made.   The proof devolved on appellants to establish the fraud, and we think they have failed.

The decree of the court below is therefore affirmed.

*Decree affirmed.*