Donna Jean Sears, *et al.*, Plaintiff-Appellant, *v.* First Federal Savings and Loan Association of Chicago, Defendant-Appellee.

(No. 55229;

First District—September 21, 1971.

624

Edward Atlas and Harold A. Harris, of Chicago, for appellant.

Sidley & Austin, of Chicago, (John M. Clark, William H. Avery, Howard Neitzert and George A. Platz, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Plaintiff filed an amended complaint in chancery individually and on

behalf of all mortgage borrowers from First Federal Savings and Loan Association of Chicago (defendant). Plaintiff sought an accounting in behalf of the class on the theory that certain money paid to defendant constituted a trust, the earnings of which should inure to the benefit of the class. The trial court sustained a motion to dismiss filed by defendant, considering only one of several stated grounds. Plaintiff appeals.

The amended complaint alleges in substance that defendant is a corporation organized under the laws of the United States. It has for many years operated a savings and loan association and has loaned money to various persons evidenced by notes of the borrowers secured by real estate mortgages. In April of 1964, plaintiff obtained a loan from defendant to finance purchase of a home. Plaintiff executed a form of note used by defendant, together with a mortgage on the property. Since the controversy centers about certain language in the note, we reproduce the pertinent portions in full:

"In order to provide for the payment of taxes, we promise to pay monthly in addition to the above payments, one-twelfth of the annual real estate taxes as estimated by the Association, in such manner as the Association may prescribe, so as to provide for the current year's tax obligation on the last day of each such year during the term of this obligation. We promise, further, to pay monthly a pro-rata share of all assessments, future hazard insurance premiums and any other charges that may accrue against the property securing this indebtedness. If the amount estimated to pay said taxes, insurance, assessments, and other charges is not sufficient, we promise to pay the difference upon demand. It is agreed that all such payments may, at the option of the Association (1) be held in trust by it without earnings for the payment of such items; (2) be carried in a borrower's tax and insurance account and withdrawn by the Association to pay such items; or (3) be credited to the unpaid balance of said indebtedness as received, provided that the Association advances upon this obligation sums sufficient to pay said items as the same accrue and become payable. If such sums are held in trust or carried in a borrower's tax and insurance account, the same are hereby pledged together with any other account of the undersigned in the Association to further secure this indebtedness and any officer of the Association is authorized to withdraw the same and apply thereon. The Association is authorized to pay said items as charged or billed without further inquiry."

The amended complaint further alleges that those persons who borrowed money from defendant executed notes with the same, or substantially the same, provisions. It is alleged that the defendant exercised the second option, set forth above, to carry the payments, "* * *

in a borrower's tax and insurance account * * *." About the time of the filing of the amended complaint, these accounts for various borrowers contained a total of some $19,000,000.

The essence of the amended complaint is then set forth to the effect that the defendant has received these monthly payments from plaintiff and all other borrowers as a trustee and fiduciary which imposed upon defendant a duty to segregate the trust funds and to account to plaintiff and other borrowers for all earnings and profits resulting from the funds. It is alleged that defendant has violated its duty as trustee by commingling these funds with its general assets and by earning large amounts of money therefrom so that defendant has become unjustly enriched by sums which should accrue to the benefit of plaintiff and the entire class.

The amended complaint also contains allegations describing the class and purporting to show the necessity for a class action and that plaintiff's representation of the class will be fair. The amended complaint prays declaratory relief to fix the status of the payments in question as trust funds; the taking of an accounting regarding profits obtained from use of the trust funds and ancillary relief such as the appointment of a receiver to collect the sums which may be found due and allowance of various fees and expenses.

The motion to dismiss the amended complaint specifies seven grounds. Paragraph number seven states that the provisions of the note are not sufficient in law or in equity to impose trust obligations upon defendant and that defendant was not otherwise required to distribute earnings to borrowers. The trial court held that this ground was ample and that it was not necessary to decide others. We will consider this stated ground first.

The problem here is the true meaning of the cited language of the promissory note. It is plaintiff's contention that exercise by defendant of the second option above described created a trust fund. Plaintiff argues ably and tenaciously that the language of the second option created a special deposit of money to be used for a specifically designated purpose and that this is sufficient to create a trust. Plaintiff urges that since the note provides that the funds in the borrower's tax and insurance account were to be pledged to secure the indebtedness created by the note, another ground exists for creation of a trust. However, with equal ability and tenacity, defendant argues that no trust is created by the language of the second option and that a pledge is not a trust. Each sidet stoutly maintains that the authorities cited in support of the contrary position may be differentiated with ease and with finality.

■■ Before embarking upon analysis of these conflicting claims, we will pause briefly to define our terms. We define an *express* trust as "* * *

one which is created in express terms in the deed, writing or will, or which arises from the direct and positive action of the parties evidenced by a written instrument * * *."(35 I.L.P. Trusts § 4 at 176.) We define an *implied* trust as one which, "* * * is deducible from the nature of the transaction between the parties, or which is superimposed on the transaction by operation of law, independently of the intention of the parties." (35 I.L.P. Trusts § 4 at 177.) Implied trusts may be further categorized into constructive and resulting trusts. *Murray v. Behrendt,* 399 Ill. 22, 27.

■■ All trusts of every kind are necessarily included within these two general classifications of express and implied. Although the term, "implied trust" has been used to designate an express trust arising from the construction of language in a document, it seems to us that it is preferable to define the trust which would arise in such situations as an express trust. Thus, if option two in the promissory note were declared to create a trust, this trust should, in our opinion, be classified as an express trust. The trust would actually arise from construction of the document or by implication from the language used; but, properly speaking, it should be classified as an express trust as differentiated from an implied trust. See: *Bogert, Trusts and Trustees* (2nd ed. 1964), § 451.

■■ We must arrive at the meaning of the second option from an examination of the language used in the document. As plaintiff urges, construction of the note is, "a pure question of law" for this court; to be determined "* * * from the clear language of the mortgage provision." However, in this process, we must examine all of the pertinent language of the note itself as above quoted. We cannot give effect to portions of the note only. Each clause and all of the language used must, if possible, be given meaning, life and effect. (*J. & R. Electric Co. v. Edward P. Allison Co., Inc.,* 125 Ill.App.2d 123, 130; *Bowler v. Metropolitan Sanitary District,* 117 Ill.App.2d 237, 242; *Donahue v. Rockford Showcase & Fixture Co.,* 87 Ill.App.2d 47, 51.) In addition, we must consider the background of the transaction befort the court. In this context, the motion to dismiss is deemed to admit all facts properly pleaded in the amended complaint. *Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill.2d 93, 96; *Follett's Illinois Book & Supply Store, Inc. v. Isaacs,* 27 Ill.2d 600, 603; *Country Mutual Insurance Co. v. Drendel,* 116 Ill.App. 2d 466, 470; *Martin v. Po-Jo, Inc.,* 104 Ill.App.2d 462, 468.

■■ We commence by noting carefully the first few words expressed in the second option; namely, the words "* * * be carried in a borrower's tax and insurance account * * *." Webster's Second New International Dictionary cites 23 separate meanings for the verb "to carry". In the light of the background of this transaction, it seems most

reasonable to define the word as "to keep on one's books as a debtor." The phrase "carry on the books" is common in legal as well as in banking circles. We also note in this connection that three words are significantly omitted from use in conjunction with the verb "carry". The note could have stated that this tax and insurance account would be "segregated", "separated" or even "isolated". None of these terms are used. Their absence shows a lack of direction and intent that this tax and insurance account be treated as a special deposit.

■■ It is true that the funds of this borrower's tax and insurance account are intended to be used primarily for a specific purpose; namely, the payment of taxes and insurance premiums. However, the final sentence of the pertinent language of the note authorizes defendant to pay these items, "* * * as charged or billed without further inquiry * * *." In addition, in the immediately preceding sentence, the document specifically pledges the tax and insurance account as further security for the indebtedness created by the note and authorizes any officer of defendant to withdraw from the account for that purpose. These additional provisions indicate that the payments made by the borrower are to be devoted to payment of the main indebtedness as well as to payment of taxes and insurance. We have, therefore, a situation in which the payments are not to be segregated or separated but merely carried on the books. These sums in effect are to be applied to payment of taxes or insurance or on account of the indebtedness; subject only to the condition that the defendant assures payment of all taxes and insurance as they become due. In effect these monthly payments by plaintiff and other borrowers were made unconditionally and coupled with a contractual obligation upon defendant to make payment of taxes and insurance, to the extent of available payments made by the borrower.

It is agreed that the borrower on a note makes monthly payments in a single sum to the defendant. These entire payments are deposited to the general funds of defendant but credits are entered on defendant's books to the borrower's tax and insurance account as well as to the main indebtedness, interest and principal. Upon consideration of all of the above circumstances, we conclude that the monthly sums paid to defendant are not deposits in any legal sense of that term but they are simply payments by a debtor upon amounts due to the creditor.

■■ These terms "deposit" and "payment" have a variety of legal meanings. However, one attribute of a deposit is that the depositor retains a right, generally under stated circumstances, to receive back all or part of the deposit or its equivalent; quite analogous to the rights of a creditor. (*People ex rel. Housing Authority v. Hursey*, 7 Ill.2d 537, 544; *Gits v. Foreman*, 360 Ill. 461, 470-71; *People ex rel. Russel v. Michigan*

*Avenue Trust Co.,* 232 Ill.App. 456, 458.) In payment, the money is delivered to the creditor and the debtor receives simply satisfaction of the debt; either *pro tanto* or in full as the case may be. *United States v. Isthmian Steamship Co.,* 359 U.S. 314, 318; *People ex rel. Brown v. Stelle,* 361 Ill. 45, 49-50; 70 C.J.S. Payment § 1.

■■ Webster's Second New International Dictionary defines the verb "to pay" as "to discharge one's obligation." Under the note here involved, the debtor makes a payment and receives simply and only *pro tanto* satisfaction of his debt. The central attribute of a deposit is lacking. The questioned language of the note executed by plaintiff uses the concept of payment some seven or eight times. No language refers to a deposit of funds. No right of refund to the borrower is established or even mentioned. All that we have here from the language of this note is a binding direction imposed upon defendant as a creditor concerning payment of taxes and insurance. *Liese v. Hentze,* 326 Ill. 633, 639; *Village of Winfield v. Reliance Insurance Co.,* 64 Ill.App.2d 253, 257-58; *Industrial Development Corp. v. United States,* 138 F.Supp. 63, 64 (N.D. Ill. 1955).

In this regard, we are impressed with the argument made by defendant that since the first option, which uses the term "trust", provides specifically that the payment is to be, "without earnings", it should follow that, if by construction or implication, the second option were to be deemed a trust, it should partake of the same attribute expressed with reference to option one and be carried without earnings. The learned and able trial judge who heard this case was also impressed by this argument. In a written memorandum sustaining the seventh ground raised by defendant in support of its motion to dismiss, the court held that, "The plaintiff has waived the right to earnings on any funds on deposit with the defendant in a trust capacity."

■■■■ The trial judge apparently reasoned that intent to create an express trust appears in the first option. The phrase "without earnings" shows clear intent by the makers of the note to waive avails or interest or earnings from the arrangement. We necessarily reject plaintiff's rather contrived argument that it was intended only to relieve defendant of its duty as a trustee to invest the monthly payments as received. The remaining two options descend in order of reduced benefit to the borrower and ascend in increased privilege to the lender. It follows *a fortiori* that, if a trust be established by construction or implication from the language of the second option, the waiver of earnings should be applied. Furthermore, if the second option be deemed to create a trust, it becomes identical in operation with the first option. Hence, all of the language of option two would become superfluous and without meaning. This would effectively deprive defendant of the option it specifically elected when it

chose the second alternative. The conclusion results that by choice of the second option defendant exercised its privilege of negating the existence of a trust relationship.

■■■■ We must expressly reject plaintiff's argument that a trust is created because of use of the word "pledge" in the note. This pertains to the statement appearing in the note: "If such sums are held in trust or carried in a borrowers tax and insurance account, the same are hereby pledged together with any other account of the undersigned in the Association to further secure this indebtedness ＊ ＊ ＊." This contention is a complete oversimplification and is based upon the most elementary deductive reasoning. The syllogism is: Every pledge is a trust. This note contains a pledge. Therefore this note is a trust. However, the major premise is completely invalid. Every pledge is not a trust. Circumstances may arise in the course of any pledge situation in which some of the attributes of a trust appear; particularly with reference to management or reduction to possession of collateral. This is the type of situation which appears in the cases cited by plaintiff. (*Wetherell v. Johnson*, 208 Ill. 247; *Union Trust Co. v. Rigdon*, 93 Ill. 458 and *Joliet Iron Co. v. Scioto Firebrick Co.*, 82 Ill. 548.) A pledgee who does not deal properly with property of the pledgor in his possession may be charged with fiduciary responsibility because he has become a constructive trustee or a trustee *ex maleficio*. However, this does not mean, and cannot mean, that every pledgee is a trustee of an express trust.

■■■■ It is true, as plaintiff argues, "＊ ＊ ＊ that the general property or title to the property pledged remains in the pledgor ＊ ＊ ", subject to the lien or rights of the pledgee until the debt has been paid. *Painter v. Merchants & Manufacturers Bank of Milwaukee*, 277 Ill.App. 208, 229. But, this merely points up and emphasizes the distinction of a pledge from the case at bar. Here, when monthly payments were made, the mortgagor divested himself of all rights to the amount paid and relied directly and solely upon the contractual obligation of defendant to pay insurance and taxes. It could be argued with greater force, and with considerably more logic, that the language, "If such sums are held in trust or carried in a borrower's tax and insurance account ＊ ＊ ＊" accentuates the absence of trust attributes from the second option because it specifically states the trust or first option as one alternative and the borrower's account as the second.

■■■ One further attribute of the transaction negatives with finality the possibility that the second option resulted in a trust relationship. As shown, these monthly payments were made by plaintiff and other borrowers virtually without recourse beyond their right to *pro tanto* pay-

ment of taxes and insurance. When the payments were made, the borrowers retained no specific property rights in any of the sums thus paid. They retained no right to refund of any portion of any payment. The payment was unconditional except for a contractual right vested in the borrower to have the taxes and insurance paid to the extent of the total of the monthly payments. Plaintiff had no property rights beyond this in any payment after it was made. The "borrower's tax and insurance account" simply provided an easy method for ascertainment of the amount available for taxes and insurance at any given time. It is ancient and basic trust law that a res or specific property is essential for the existence of a trust. (*Colegrove & Co. State Bank v. Gaupp*, 357 Ill. 499, 504; *Williams v. Rock River Savings & Loan Association*, 51 Ill.App.2d 5, 13; *Bogert, Trusts and Trustees*, § 111 (2nd ed. 1964).) Since no property right was retained by plaintiff in payments after made, it must necessarily follow that no trust was created.

■■ All of these matters point with definity to the essential lack of any attribute of a trust in the second option. Thus, although we expressly approve of the statement of the trial judge regarding waiver, we will also base our affirmance of the judgment upon the broader base of interpretation and construction of the entire portion of the note stated above, as viewed in the light of the entire transaction between the parties.

■■ The conclusions above reached are amply supported by additional excellent authority. Even assuming that the payments made by plaintiff can properly be designated as "deposits" as distinguished from "payments", we believe that the result would follow that these funds would not be held in trust as a special deposit. A number of decisions are cited by both parties in connection with this specific facet of the problem. Plaintiff relies upon several cases of which *People v. Farmers State Bank*, 338 Ill. 134 and *People v. West Side Trust & Savings Bank*, 376 Ill. 339 are typical. Both of these decisions involve bank deposits. Both divide the general term "deposit" into special and general categories. It is pointed out in these cases that in a general deposit, the bank merely becomes the debtor of the depositor. Where there is a deposit, "* * * by special agreement or under circumstances sufficient to create a trust * * *" the relationship of trustee and beneficiary is created. (*People v. Farmers State Bank*, 338 Ill. 134, 137.) The same distinction was set forth in *People v. West Side Trust & Savings Bank*, 376 Ill. 339, 342 where the problem before the court was the allowance of a preferred claim against the assets of the closed bank. However, cases of this type are inapplicable here. In the case at bar, we are not dealing with a segregated deposit set up solely for a specific purpose. Also, the

circumstances here are not only not "sufficient to create a trust," (*People v. Farmers State Bank,*) 338 Ill. 134, 137, but the language used negates the possibility of creation of an express trust.

■■ The opinion of the Court of Appeals for the Eighth Circuit, based upon the law of Missouri, serves to clarify this situation. (*First National Bank of Clinton v. Julian* (8th Cir. 1967), 383 F.2d 329.) There, the debtor established a checking account in the bank as a security reserve. There was no agreement for isolation of this account or for the bank to hold it separate and apart from other funds. Monthly deposits were made by the debtor and he was not permitted to draw checks without approval of the bank. The court held that this type of account, although a general deposit for a special purpose, created simply a general deposit. The court pointed out that the distinguishing feature of the transaction was the absence of any agreement that the deposit be kept intact and in effect segregated for a specific purpose. (383 F.2d 329, 337.) The Court of Appeals cited and depended upon the Restatement of the Law of Trusts as well as a statement made in 10 Am.Jur.2d Banks § 363. The factor of absence of any agreement for separation, segregation or isolation of the funds is thus apparently a prime consideration in determining that the account in question constituted a general deposit as distinguished from a trust fund.

Another convincing authority is the decision by this court in *Italo American National Union v. Mead Cycle Co.*, 12 Ill.App.2d 479, published only in abstract. A tenant gave the landlord a sum of money as collateral security for the faithful performance of all obligations of the lease but also as rent for the last five months of the term. This court held that this transaction did not establish a trust relationship but that it was in effect payment of an indebtedness due the lessor. The following language of the court is pertinent here:

"In no event was the deposit, or any part thereof, to be returned to the lessee. If the lessee did not breach the lease, the fund was to be held by the lessor as payment of rent for the last five months. The money, therefore, became the property of the lessor immediately upon its payment or deposit, to be used first for the payment of damages, if any, resulting from any breach of the lease by lessee, and then for the payment of the rent at the end of the term. There is no trust relation between the parties and the court cannot alter the terms of the contract between them."

Perhaps the most persuasive authority cited in all of the voluminous briefs is *First Federal Savings and Loan Association of Lincoln v. The Board of Equalization of Lancaster County*, 182 Neb. 25, 152 N.W.2d 8. There, the Federal Savings and Loan Association challenged imposition

of a tax upon intangible property. The property involved was advance monthly payments by borrowers to be used to pay taxes and insurance upon mortgaged property. The Supreme Court of Nebraska pointed out that if these payments became the property of the Savings and Loan Association they would be exempt from the intangible tax. On the contrary, if they remained the property of the borrowers, they would be subject to the tax. The court held that the relationship between the borrower and the Association was contractual and that the rights and liabilities of the various borrowers would be determined by the loan instruments. The heart of the short opinion can be found in the following paragraphs (152 N.W.2d 8 at 9):

> "The testimony and the loan instruments which appear in the record show that the advance payment for taxes and insurance, where required, is as compulsory as the payment for interest and principal. The borrower's only right is to require that each payment be applied in accordance with the terms of the contract. The plaintiffs are not required to keep the advance payment funds separate, but are permitted to commingle and invest them and keep the earnings. Any surplus over and beyond the amount required to pay the taxes and insurance is used to reduce the principal of the loan. The borrower has no right to a refund while the principal indebtedness remains unpaid, but in some cases the association could make a refund at its option.

> We think that the record shows that the advance payments for insurance and taxes, when made, become the property of the plaintiffs the same as any other payment required of the borrower. Other courts which have considered the question have reached a similar conclusion. See, In re Simon, D.C., 167 F. Supp. 214; Central Suffolk Hospital Assn. v. Downs, Sup., 213 N.Y.S.2d 192; Valerio v. College Point Savings Bank, 48 Misc.2d 91, 264 N.Y.S.2d 343."

The court concluded that the advance payments for interest and taxes when made become the property of the Loan Association precisely as any other payment required of the borrower. As above shown, the Supreme Court of Nebraska cited three cases in support of its conclusion. Plaintiff urges that these three cases fail to support the result reached. Upon examination, we conclude that these three decisions do support the position taken by the Supreme Court of Nebraska. The conclusion was reached that the mortgagor has no interest in funds thus paid and such funds are not susceptible to appropriation by other creditors. The three cases in chronological order are In the Matter of Noel Simon, Bankrupt (E.D.N.Y. 1958), 167 F.Supp. 214; *Central Suffolk Hospital Association v. Downs* (1961), 213 N.Y.S.2d 192 and *Valerio v. College Point Savings Bank* (1965), 264 N.Y.S.2d 343.

634

■■■ Another persuasive circumstance arises from the pertinent regulation of the Federal Home Loan Bank Board. The Board is the governing body of all Federal savings and loan associations and has statutory authority to issue regulations governing their transaction of business. (12 U.S.C.A. § 1464(a).) In a frequently cited statement, the United States District Court has described these rules as "* * * comprehensive rules and regulations concerning the powers and operations of every Federal Savings and Loan association from its cradle to its corporate grave." (*People v. Coast Federal Savings & Loan Association* (S.D.Cal. 1951), 98 F.Supp. 311, 316.) The same opinion pointed out that these rules and regulations, "* * * have the force and effect of law, and are noticed judicially." (98 F.Supp. 311, 316.) Regulations of the Board permit the defendant here to require its borrowers to make advance payments of taxes and insurance. The regulation provides (12 C.F.R. § 545.6-11):

"A Federal association may require that the equivalent of one-twelfth of the estimated annual taxes, assessments, insurance premiums, and other charges on real estate security, or any of them, be paid in advance to such association in addition to interest and principal payments on its loans, to enable the association to pay such charges as they become due from the funds so received."

■■ This specific regulation for advance payments by the borrower negates the idea that such payments are deposits which are to be held as a trust for the benefit of the debtor. The second option in the note, exercised by defendant, was merely a provision for advance payments for taxes and insurance as authorized by the regulation and was not intended to establish a trust fund. The conclusion necessarily follows that there was no trust relationship between these parties. The order dismissing plaintiff's amended complaint upon the seventh stated ground in the motion to dismiss was correct and proper in all respects.

The motion to dismiss filed by defendant raised a number of additional grounds. Defendants brief argued certain of these grounds extensively and cited many authorities. Defendant argues strongly: (1) that pertinent regulations of the Federal Home Loan Board do not permit payment of earnings or interest on the payments in question; (2) the Federal Home Loan Bank Board has primary jurisdiction with respect to the subject matter of the amended complaint; (3) plaintiffs claim is barred by laches; and, (4) that plaintiff cannot maintain this suit as a class action. Plaintiff has responded to each of these arguments in a forceful and ample manner. On oral argument, we granted defendant leave to file instanter an additional brief and argument. With our permission, plaintiff has filed a lengthy response. In addition, with leave of

court, plaintiff has filed a supplemental brief on the issue of primary jurisdiction. We granted permission to file this document despite lengthy objections filed by defendant. Also, we have taken with the case a motion to correct defendant's brief which is actually equivalent to yet another brief and argument and a detailed reply by plaintiff to this motion.

■■ In our opinion, defendant, as the successful appellee, may urge any point shown by the record for affirmance of the judgment even though these points were not raised or passed upon by the trial court. (*Shaw v. Lorenz*, 42 Ill.2d 246, 248. For an excellent exposition of this principle, see also *Becker v. Billings*, 304 Ill. 190, 205.) However, in view of the conclusions above reached, we find it unnecessary to pass upon any of these remaining contentions raised by defendant. Consequently, we expressly abstain from deciding defendants motion to correct its brief and we refrain from expressing any opinion with reference to the additional grounds raised in the motion to dismiss.

The order dismissing plaintiffs amended complaint is affirmed.

Order affirmed.

BURKE, P. J., and LYONS, J., concur.