11 Ill. App.3d 631 (1973)
297 N.E.2d 255
BILLY F. JANES and MARIE JANES, Individually and on Behalf of all Other Persons Similarly Situated, Plaintiffs-Appellants,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BERWYN et al., Defendants-Appellees.
No. 56774.
Illinois Appellate Court  First District (1st Division).
April 16, 1973.
*632 *633 Glazer and Cohan, of Chicago, for appellants.
Gomberg and Sharfman, Ltd., of Chicago, (David L. Gomberg and Robert J. Sharfman, of counsel,) for appellee First Federal Savings and Loan Association of Berwyn.
Nicholas S. Limperis, of Chicago, for appellee Irving Federal Savings and Loan Association.
Francis J. Higgins, and Lawrence D. Solomon, of Chicago, (Bell, Boyd, Lloyd, Haddad & Burns, of counsel,) for appellee Chicago Title & Trust Company.
Judgment affirmed.
*634 Mr. JUSTICE GOLDBERG delivered the opinion of the court:
Billy F. Janes and Marie Janes (plaintiffs) appeal from an order dismissing their amended complaint filed by them, individually and in a representative capacity on behalf of all persons similarly situated, and entering summary judgment against them in their suit against First Federal Savings & Loan Association of Berwyn (Berwyn), Irving Federal Savings & Loan Association (Irving) and Chicago Title & Trust Company (Chicago Title). Before stating the contentions of the parties, we will summarize the facts which appear from the amended complaint and from the affidavits filed by defendants in support of their respective motions.
Count I of the amended complaint alleged that plaintiffs entered into a contract for the purchase of real estate which was to be financed by Berwyn. Berwyn required that a preliminary report of title, as well as a title insurance policy, be obtained from Chicago Title. Berwyn ordered these items from Chicago Title "* * * on behalf of [p]laintiffs." In due course, an invoice for these services was issued by Chicago Title directed to Berwyn. These charges were apportioned between plaintiffs and the sellers of the real estate. Items pertaining to plaintiffs were paid by Berwyn from proceeds of the loan as reflected in the loan statement issued by Berwyn.
It was further alleged that neither the invoice from Chicago Title nor Berwyn's loan statement reflected a rebate of 10% given to Berwyn. This rebate was given although Chicago Title knew that plaintiffs were the purchasers of the real estate. Instead, Berwyn charged plaintiffs the full price for the services rendered by Chicago Title and retained the rebate. This created a trust for plaintiffs; or, alternatively, was a wrongful conversion of plaintiffs' funds or an unjust enrichment of defendants. This practice violated certain Federal regulations. 12 C.F.R. 545.6-10.
Count I also alleged that Berwyn had conspired with Chicago Title to deprive plaintiffs and other persons similarly situated of the funds in question and that there were large numbers of persons similarly situated who had purchased real estate which was financed through Berwyn. These persons constituted a class which had a common interest in obtaining a refund and an accounting. The class was large in number and permitting the action in a representative capacity would avoid a multiplicity of suits. The amended complaint prayed an accounting, injunctional relief against Berwyn from receiving discounts or rebates without returning same to sellers or buyers of property and other relief including reasonable fees to plaintiffs' attorneys.
The second count of the amended complaint repeated virtually the same allegations against Irving and prayed the same relief. It alleged, *635 however, that plaintiffs were sellers of real estate which was to be financed by Irving. The third count contained virtually the same allegations with reference to Chicago Title. It also alleged that this defendant knew that Berwyn and Irving did not pay the discount or rebate to the respective purchasers or sellers but that it still continued to make payment thereof to them. It alleged that Chicago Title conspired with Berwyn and Irving and with other savings and loan associations to enrich themselves unjustly and to deprive other persons of funds rightfully theirs.
Berwyn filed a motion to strike and dismiss the amended complaint and for summary judgment. The motion averred that no facts were alleged which set forth any basis for requiring the lending institution to pass on to the borrower, or to account for, a prompt payment allowance. The motion also cited the applicable Federal regulations and stated that the reference thereto in the amended complaint was not actionable.
Berwyn also filed an affidavit by its president. This set forth that prior to making any loan, Berwyn required a report on title. Berwyn ordered this report for its own use and through its own account. Many times such report was utilized by the parties to real estate transactions and paid for by them as they agreed. The affidavit then itemized various methods of ordering and paying for this preliminary report; listing nine separate methods of payment such as by the lender, attorneys, etc. In some cases, no title report was obtained but a Torrens Certificate was used.
Irving also filed a motion to strike and dismiss the amended complaint and for summary judgment based upon virtually the same grounds. An affidavit by the president of Irving was filed. It alleged that Irving requires a report of title or other evidence relative to the lien of its mortgage. In this regard, Irving, upon its own credit, deals with various title insurance companies in obtaining preliminary reports which are utilized for Irving's benefit as well as for the benefit of the borrower. The cost of these reports is billed to Irving which pays these bills promptly when due and receives "whatever prompt payment allowance is customarily allowed." Irving has no agreement with Chicago Title or any other title insurance company except to pay the customary prevailing charge for services rendered. Ultimately, this cost is charged to the buyer of the real estate who applied for the mortgage loan or is handled in accordance with such directions as the buyer may give.
Chicago Title filed a motion to strike and dismiss the amended complaint or alternatively for summary judgment. It averred that it does not control or restrict disbursement of prompt payment allowances which it makes to savings and loan associations. It alleged that the amended complaint *636 fails properly to allege any acts of conspiracy or illegal purpose and fails to allege any conversion or misappropriation by Chicago Title of funds or property belonging to plaintiffs or any contracts with plaintiffs for payment of title charges. It alleged that there was no proper basis for a class action and no basis in law or in equity for injunctional relief which would prevent it from offering discounts to preferred customers without offering the sane to all customers.
An affidavit was filed by the senior vice president of Chicago Title. It set forth that Chicago Title has given a monthly prompt payment allowance to savings and loan associations which have opened a credit account with it and have agreed to pay all charges on the account by the 10th day of the month following the date of the invoice. Exceptions to this rule are made only to allow for mailing or processing delays, in the case of items billed during the last three days of a month or for delay by a good customer with a reasonable explanation. This allowance is 10% of the net charges after eliminating recording or escrow fees and cash advances.
The affidavit also set forth in detail that this allowance was an inducement to the customer for prompt payment and also a recognition by Chicago Title of benefits received by it, such as personal liability of the lending institution to pay the charges regardless of their ultimate compensation from the principals; completion by the lender of applications for title policies and obtaining by it of necessary documents such as waivers, tax receipts or judgment affidavits; and reduction in cost and labor in accounting and billing procedures; all of which are of considerable benefit to Chicago Title. The affidavit further averred that Chicago Title imposes no agreement or understanding that the lending association will not deal with any competing title company and that no such condition was imposed in connection with Berwyn or Irving. Finally, the affidavit alleged that Chicago Title does not restrict or control in any manner the disbursement of allowances by any lending institution and did not do so or attempt to do so with regard to the transactions here involved.
Plaintiffs contend that Counts I and II of their amended complaint state a good cause of action against Berwyn and Irving upon a theory of resulting or constructive trust; or, alternatively on theories of conversion or unjust enrichment resulting from a quasi contractual relationship. Plaintiffs also contend that the lending institutions have violated applicable Federal regulations. Plaintiffs further contend that they have alleged a good cause of action against Chicago Title predicated upon conspiracy and also upon misrepresentation. Defendants Berwyn and Irving urge that the amended complaint sets forth no cause of action *637 upon any trust basis, for wrongful conversion or for unjust enrichment and no cause of action for conspiracy. They further contend that they have not violated Federal regulations so that the suit was properly dismissed and summary judgment in their favor was properly entered. Chicago Title contends that Count III of the amended complaint fails to show any legal duty owed by Chicago Title to plaintiffs; fails to state a cause of action for misrepresentation or conspiracy; and, further, that the injunctional relief prayed in connection with the granting of prompt payment allowances would be improper.
Rather than unduly extending this opinion with analysis of many cases, we will simply state that none of the briefs cite any decisive authority which is completely germane to the situation at bar. However, we will note the recent decision of this court in De Phillips v. Mortgage Associates, Inc., 8 Ill. App.3d 759, 291 N.E.2d 329, leave to appeal denied March 27, 1973. There, plaintiffs were the buyers of a piece of real estate being financed by a mortgage in the amount of $16,800. It developed that the lender had disbursed a total of $15,792 but had retained $1008 which had been charged against the sellers as a mortgage discount. The real estate contract executed by the parties specified that this discount was to be paid by the sellers. The trial court denied plaintiffs' claim that they were entitled to receive this sum from the lender. This court affirmed the decree in that regard holding that plaintiffs had not been damaged by a payment of the discount to the lender by the sellers. In other words, plaintiffs received all that they were entitled to receive in accordance with their agreement. While not completely factually similar to the case at bar, this decision is analogous to the situation here presented. We will next consider the contentions made by plaintiffs.
 1 The problem here is to determine whether any of the alternative theories urged by plaintiffs are sufficient to state a cognizable cause of action or to raise material issues of fact which require trial. The first inquiry is whether the legal elements of a conversion, such as would support an action in trover, are present here. The traditional action of trover "* * * does not operate on chattels generally, but specifically, such as money in coin or bills, animals, or other property capable of identification as being the actual property or thing wrongfully taken and converted." (Kerwin v. Balhatchett, 147 Ill. App. 561, 566.) This same decision cites sec. 524, 2 Cooley on Torts, page 857, as authority for "* * * an axiom of the law that trover will not lie for money given to a defendant to be used for a particular purpose, which defendant converts to his own use or which may be found due upon an accounting." (See 147 Ill. App. at 566.) This necessary element of specific property is completely lacking in the case at bar.
*638  2 In Burge v. Englewood M.C. and G. Co., 213 Ill. App. 357, plaintiff brought an action in trover for conversion of an automobile. The vehicle was stolen from a public garage operated by defendant. The action was commenced as replevin for possession of the automobile but plaintiff later filed a statement of claim in trover alleging conversion. A verdict and judgment for plaintiff were reversed by this court. Citing 38 Cyc. 2008, the court held that "* * * neither negligence, active or passive, nor a breach of contract, even though it result in the loss of specific property, constitutes the wrong under consideration." (213 Ill. App. at 363.) We conclude that no cause of action for conversion is pleaded in the case at bar.
 3 Plaintiffs next contend that the amended complaint properly alleges the existence and breach of a trust. In Sears v. First Fed. Sav. & Loan Assn., 1 Ill. App.3d 621, 275 N.E.2d 300, we defined the classification of express and implied trusts. All trusts of every kind are necessarily included within these two general categories. Plaintiffs concede that we cannot be dealing here with an express trust which must arise "* * * from the direct and positive action of the parties evidenced by a written instrument * * *." (1 Ill. App.3d at 627.) A resulting trust is clearly defined and limited by the law to situations in which land or other property "* * * is bought with the money of one person and title is taken in the name of another." (Suwalski v. Suwalski, 40 Ill.2d 492, 495, 240 N.E.2d 677.) This does not exist here.
 4, 5 A constructive trust arises only by operation of law and then, "* * * only when fraud is proved or when advantage is taken of a fiduciary relationship by the dominant party." (Perry v. Wyeth, 25 Ill.2d 250, 253, 184 N.E.2d 861.) We find no allegations in the amended complaint sufficient to raise an issue of fraud. Fraud cannot be presumed from mere silence. It must be specifically alleged in any pleading which attempts to charge it. (Atwood Vacuum Mach. Co. v. Continental Casualty Co., 107 Ill. App.2d 248, 266, 246 N.E.2d 882.) There is no specific allegation in the amended complaint concerning the making of any fraudulent misrepresentation.
 6, 7 Furthermore, there is no fiduciary or confidential relationship disclosed from the allegations of the amended complaint. This relationship necessarily involves trust and confidence where one party to a transaction "* * * gains an influence and superiority over the other." (De Phillips v. Mortgage Associates, Inc., 8 Ill. App.3d 759, 763, 291 N.E.2d 329.) This jurisdiction has consistently held that "the relationship of mortgagor and mortgagee does not of itself show the existence of a confidential or fiduciary relationship." (8 Ill. App.3d at 763.) We conclude *639 that the record fails to present the essential elements of a trust relationship.
 8, 9 Plaintiffs next contend that they are entitled to recover upon a quasi contractual theory to prevent unjust enrichment of defendants at the expense of plaintiffs. We find a complete and illuminating exposition of the theory of quasi contracts in Highway Comm'rs v. City of Bloomington, 253 Ill. 164. This authority cites many situations in which the courts have granted quasi contractual relief, always based upon principles of equity and good conscience which should operate to prevent one person from retaining money or its equivalent which actually belongs to another. We find no such situation existing here. It affirmatively appears from the allegations of the amended complaint and the exhibits appended thereto that plaintiffs were called upon to pay only the usual and customary charges by Chicago Title for the services they rendered. The only complaint is that after the transaction had been entirely closed, and after the bill had actually been paid, a portion thereof was remitted by the Title Company to Berwyn or Irving as payment for or recognition of their services rendered. None of the three defendants thus has received funds which should equitably be returned to plaintiffs.
 10, 11 Nor can plaintiffs recover upon a theory of conspiracy. The amended complaint alleges simply that the three defendants conspired to deprive plaintiffs and unjustly to enrich the defendants. It has repeatedly been held in Illinois that no cause of action is stated by a pleading which contains this simple type of conclusionary allegation regarding the existence of a conspiracy. There must be independent allegations which would indicate a legal or equitable wrong upon which some liability may be predicated. (Jamieson v. American National Safe Deposit Co., 133 Ill. App.2d 647, 273 N.E.2d 741, 744.) Conspiracy as such is not an actionable civil wrong. Rather, "* * * [i]t is the act performed in pursuance of the agreement that may result in liability." B.R. Paulsen & Co., Inc. v. Lee, 95 Ill. App.2d 146, 152, 237 N.E.2d 793.
The next and last issue raised by plaintiffs is that of alleged violation of the applicable regulations of the Federal Home Loan Bank Board. See 12 C.F.R., sec. 545.6-10. (See Sears v. First Fed. Sav. & Loan Assn., 1 Ill. App.3d 621, 634, 275 N.E.2d 300, for the applicability and effect of such regulations.) The regulation provides that "* * * [b]orrowers may be required to pay the necessary initial charges in connection with the making of a loan, including the actual costs of title examination * * *." The regulation also provides "* * * [t]hat no discount, rebate, or commission on any such charge may be received by any director, officer or employee of a Federal association * * * but such *640 discounts, rebates, or commissions, when allowed as compensation for services performed, may be received and retained by the association." The regulation further provides that "* * * the association shall furnish the borrower a loan statement showing in detail the charges or fees the borrower has paid or obligated himself to pay to the association or to any other person in connection with such loan * * *."
Neither party has cited any authority concerning the interpretation of these regulations. Proceeding, therefore, upon analysis of the language thereof, the first portion requires that the borrower pay "the actual costs of title examination." As regards the relationship between the buyer and Chicago Title, it would seem clear that the words "actual costs" refer to the statement issued by the Title Company reflecting all costs such as release fees, recording charges and the usual and customary fee for the preliminary examination of the title. Any party to a real estate transaction who dealt with Chicago Title would be obliged to pay these same charges. Even persons having an account with the company are initially required to pay these charges in full, as would the ordinary buyer who obtained his own title examination directly from the company.
 12 The proviso in the regulation forbids receipt of discounts or rebates by any director, officer or employee of a Federal association. However, there is a specific provision that such rebates, when allowed as compensation for services performed, "may be received and retained by the association." This record shows without contradiction that the discount or rebate received by Berwyn and Irving in the case at bar was given to them not only for prompt payment of bills but in consideration of significant services actually rendered by them to Chicago Title as above set forth. Furthermore, the amended complaint and the exhibits appended thereto demonstrate that Berwyn and Irving complied with the regulation by showing in detail the charges or fees which the parties to the transaction were obliged to pay. We find no violation of the applicable regulations by Berwyn or Irving.
 13-15 The above considerations lead us to conclude that the amended complaint fails to state a cause of action against any of the defendants. We will briefly consider the summary judgments entered in favor of defendants. The issue is whether the entire record presents a genuine issue of material fact. (Ill. Rev. Stat. 1971, ch. 110, par. 57(3); Saghin v. Romash, 122 Ill. App.2d 473, 478, 258 N.E.2d 581.) All three defendants supported their motions with affidavits in proper form duly executed by their corporate officials. Plaintiffs filed no counteraffidavits in opposition. Under these circumstances, the material facts properly set forth in the affidavits on behalf of defendants stand admitted. (Glen View Club v. Becker, 113 Ill. App.2d 127, 136, 251 N.E.2d 778.) Even the allegations of *641 the verified complaint of plaintiffs cannot prevail over the uncontradicted facts set forth in the affidavits presented by defendants in support of their motion for summary judgment. (Fooden v. Board of Governors, 48 Ill.2d 580, 587, 272 N.E.2d 497.) We find no material issue of fact presented by this record. We conclude that the trial court properly entered summary judgment in favor of defendants.
 16 The parties have argued the issue of whether a proper class action is presented by the pleadings. Under the views above expressed, the matter need not be considered. However, since we have held that plaintiffs have no individual cause of action, it would follow necessarily that any attempted class action must fail. See De Phillips v. Mortgage Associates, Inc., 8 Ill. App.3d 759, 764, 291 N.E.2d 329.
It is, therefore, concluded that the trial court properly entered judgment dismissing the suit with prejudice and granting the motions of all three defendants for summary judgment in their favor.
Judgment affirmed.
BURKE, P.J., and EGAN, J., concur.