ERNEST LaTHROP *et al.*, Plaintiffs-Appellants, *v.* BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (3rd Division)    No. 60252

Opinion filed July 29, 1976.—Modified upon denial of rehearing October 7, 1976.

Edward Atlas and Harold A. Harris, both of Maremont, Lewin & Maremont, of Chicago, for appellants.

Henry F. Vallely and James M. Staulcup, Jr., both of Cummings & Wyman, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

In this case, we are asked to consider the question of whether individuals representing a class of mortgagors are entitled to maintain an action against their mortgagee for interest earned by the mortgagee on the mortgagors' advance payments to the mortgagee for taxes, assessments, and insurance. Plaintiffs-mortgagors, Ernest and Mary LaThrop, filed suit in the circuit court of Cook County against their mortgagee, Bell Federal Savings and Loan Association, asking for an accounting of such wrongfully appropriated earnings. The trial court granted defendant's motion to dismiss, and this appeal was taken by plaintiffs.

We affirm.

The pertinent facts are as follows. On May 2, 1969, plaintiffs secured a mortgage loan from Bell. The mortgage was in a form prescribed by the Federal Housing Authority, which guaranteed the loan. By the terms of the mortgage, plaintiffs promised:

"That, together with, and in addition to, the monthly payment of principal and interest payable under the terms of the note secured hereby, the Mortgagor will pay to the Mortgagee, on the first day of each month until the said note is fully paid, the following sums:

(a) An amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium if this instrument and the note secured hereby are insured, or a monthly charge (in lieu of a mortgage insurance premium) if they are held by the Secretary of Housing and Urban Development, as follows:

(I) If and so long as said note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to

accumulate in the hands of the holder one (1) month prior to its due date the annual mortgage insurance premium, in order to provide such holder with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder, or

(II) If and so long as said note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly charge (in lieu of a mortgage insurance premium) which shall be in an amount equal to one-twelfth (1/12) or one-half (1/2) per centum of the average outstanding balance due on the note computed without taking into account delinquencies or prepayment;

(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus taxes and assessment next due on the mortgaged property (as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes and special assessments; and

(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the Mortgagor each month in a single payment to be applied by the Mortgagee to the following items in the order set forth;

(I) Premium charges under the contract of insurance with the Secretary of Housing and Urban Development, or monthly charge (in lieu of mortgage insurance premium), as the case may be;

(II) Ground rents, if any, taxes, special assessments, fire and other hazard insurance premiums;

(III) Interest on the note secured hereby; and

(IV) Amortization of the principal of the said note."

We are concerned with section (b), which provides that plaintiffs-mortgagors will make monthly advance payments for ground rents, hazard insurance premiums, taxes and assessments to Bell, "such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes and special assessments * * *."

Plaintiffs contend that the language in section (b) created a trust, and

that Bell violated its trust duties by commingling the trust funds with its general funds, using the funds in its operations, earning money through the use of the trust funds, and appropriating the earnings for itself. In the alternative, plaintiffs contend that Bell should be declared a constructive trustee of the funds for the benefit of plaintiffs and the class they represent. Defendant admits that it commingles the funds, denies that it is a trustee, and contends that it has the legal right to treat the funds as its own.

■■ The first issue on appeal is whether an express trust was created in the mortgage by the language requiring that the funds are "to be held by the Mortgagee in trust to pay * * *." Plaintiffs' basic position is that the clear language of the instrument leaves no room for construction, and that the "in trust" provision in the FHA form mortgage has been held to create a trust. Defendant argues that (1) the mortgage language is inconsistent with the creation of a trust; (2) the intention of the parties to create a trust is lacking; (3) the Bank is not required by law to either segregate the advance payments or pay earnings to mortgagors; and (4) at most, the advance payments are general deposits for a special purpose which do not create a trust.

The first Illinois case to consider the question of whether an express trust may be found to exist with regard to a mortgagor's advance payments for taxes and insurance is *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 275 N.E.2d 300, 50 A.L.R.3d 683. Therein, the mortgagors argued that the clear language of that mortgage controlled. Of this argument, this court stated:

> "* * * we must examine all of the pertinent language of the note itself as above quoted. We cannot give effect to portions of the note only. Each clause and all of the language used must, if possible, be given meaning, life and effect. * * * In addition, we must consider the background of the transaction before the court." (1 Ill. App. 3d 621, 627.)

Although the mortgage language in *Sears* is substantially different than the unqualified "in trust to pay" provision in the instant case, the above stated rule is applicable. It is also clear that the use or nonuse of the words "in trust" "is not the controlling criteria as to whether an express trust has or has not been created." (*Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 49; Restatement (Second) of Trusts §24(2) (1959).) The question of law arising in such a case is "whether the settlor manifested an intention to impose upon himself or upon a transferee of the property, equitable duties to deal with the property for the benefit of another person," which is in effect "whether the settlor manifested an intention to create the kind of relationship which to lawyers is known as a trust." 1 Scott, Law of Trusts §24, at 192 (3d ed. 1967).

Bell argues that the mortgage language is inconsistent with the creation of a trust, citing *Sears.* The first inconsistency noted is that the mortgagors made *payments* to the mortgagee, and the concept of payment is inconsistent with a trust relationship. The court in *Sears* stated:

"Webster's Second New International Dictionary defines the verb 'to pay' as 'to discharge one's obligation.' Under the note here involved, the debtor makes a payment and receives simply and only *pro tanto* satisfaction of his debt. * * * All that we have here from the language of this note is a binding direction imposed upon defendant as a creditor concerning payment of taxes and insurance." (1 Ill. App. 3d 621, 629.)

Bell's theory is that the payments were merely a part of the debtor-creditor relationship which existed between the parties with respect to the advanced funds for the ultimate payment of taxes and insurance premiums. A contrary interpretation was made by the Pennsylvania Supreme Court in *Buchanan v. Brentwood Federal Savings & Loan Association* (1974), 457 Pa. 135, 150, 320 A.2d 117, 125, which felt that such a construction of "pay" was hypertechnical, and not in keeping with the reading of the agreement as a whole, stating that "the word 'pay' was used generically to mean tender, hand over, or deliver."

■■ The second inconsistency argued by Bell is that the mortgage document does not require the segregation or isolation of the advanced funds, which tends to show that a trust was not intended. *Sears* held that the absence of terms requiring the segregation of funds showed a "lack of direction and intent" that the funds were to be held in trust as a special deposit. (1 Ill. App. 3d 621, 628.) Of the lack of segregation, one commentator wrote:

"The court's reasoning [in *Sears*], however, assumes its conclusion that no trust exists; for, if the escrow funds were intended to be held in trust, then the bank's failure to segregate the funds would indicate the bank's breach of that trust rather than demonstrate that no trust was present." (Note, *Lender Accountability and the Problem of Noninterest-Bearing Mortgage Escrow Accounts,* 54 Boston U.L. Rev. 516, 524 (1974).)

Neither alleged inconsistency is controlling on the issue because the real question, of course, is whether the mortgagors intended to create a trust, notwithstanding that they may not have known "the precise characteristics of the relationship which is called a trust." 1 Scott, Law of Trusts §23, at 191.

■■■ The first element necessary for the creation of an express trust is an explicit declaration of trust, or circumstances which show that a trust was intended to be created. If an intention to create a trust can be fairly collected from the language of the instrument in question, the courts will

give effect to that intention. (*Stowell v. Satorius* (1952), 413 Ill. 482, 492.) No particular form or words are necessary to create a trust. (*Goldstein v. Handley* (1945), 390 Ill. 118.) As this court stated generally in *Williams v. Teachers Insurance & Annuity Association* (1973), 15 Ill. App. 3d 542, 546: "Equity looks to the substance rather than the form; if a trust was created it does not matter whether it is designated accurately, inaccurately or not at all." Some of the considerations for identifying the intention to create a trust are set forth in 89 C.J.S. *Trusts* §43, at 776 (1955):

> "* * * the intention may be gathered from powers granted and duties imposed and from manifest purposes which cannot be accomplished except through a trust, or from the relationship of the parties and acts affecting the title to, and possession of, the trust property."

We now turn to a consideration of the mortgage agreement before us and the transaction of which it is a part. Plaintiffs borrowed money from defendant to purchase a home, and gave a mortgage on their home to defendant as security. The mortgage was guaranteed by the Federal Housing Authority. Under the mortgage agreement, the mortgagors remained primarily liable for the payment of insurance premiums, taxes, and assessments on the mortgaged property. The mortgagee required, however, that the mortgagors pay to it a certain amount every month so that the mortgagee could make the payments when these obligations became due. Should the mortgagors refuse or neglect to make the advance payments for these obligations to the mortgagee, the mortgagee was entitled to pay such obligations itself and tack the amount so expended onto the mortgagors' indebtedness.

The mortgagee is allowed by law to require such monthly payments. (12 C.F.R. §545.6—11.) The origins of this practice were explained in a recent case:

> "In the 1930's substantial numbers of foreclosures were caused by inability to pay annual assessments. As a result of this, banks began requiring the monthly tax payments. The theory was that individual homeowners, especially small borrowers, would find it easier to make monthly payments of one-twelfth the yearly taxes, than to meet in a single payment the annual bill. The practice has continued ever since." (*Buchanan v. Brentwood Federal Savings & Loan Association* (1974), 457 Pa. 135, 141, 320 A.2d 117, 121.)

(See generally Note, *Lender Accountability and the Problem of Noninterest-Bearing Mortgage Escrow Accounts*, 54 Boston U.L. Rev. 516 (1974); Note, *The Attack Upon the Tax and Insurance Escrow Accounts in Mortgages*, 47 Temp. L.Q. 352 (1974); and Note, *The Real Estate Escrow Account—Recent Trends Toward Reform*, 10 Ga. State B.J. 618 (1974).) The primary purpose of the monthly payments is to serve as an

additional security device for the protection of the mortgagee savings and loan association's interest in the mortgaged property. The mortgagee knows that if these obligations are satisfied in a timely fashion, its interest in the mortgaged property or its proceeds would not be impaired. Should the property be destroyed by fire, the mortgagee would be protected by the proceeds of a valid insurance policy. Similarly, by making sure the taxes and assessments are paid, the mortgagee protects itself from a tax sale of the property and the subordinate role the mortgagee must take to the taxing body.

■■ The question, however, is whether the mortgagors intended to retain such an interest in the money given to the mortgagee as would be consistent with the creation of an express trust. Many courts which have dealt with similar cases have ruled that as a matter of law, the mortgagor relinquishes all control over the money when it is tendered to the mortgagee. It has been held that should a mortgagor be declared bankrupt, the trustee in bankruptcy could not recover the funds from the mortgagee, even where the mortgage stated that the mortgagee "shall hold such monthly payments in trust * * *." The court in *In re Simon* (E.D. N.Y. 1958), 167 F. Supp. 214, 215, wrote that such funds "are no longer within the control or jurisdiction of the bankrupt." In *Central Suffolk Hospital Association v. Downs* (1961), 213 N.Y.S.2d 192, the mortgagor's judgment creditor attempted to reach the funds which, under the terms of a similar FHA mortgage, were to be held by the mortgagee "in trust to pay." The court wrote:

> "The funds paid by the judgment debtors under the foregoing provisions are no longer under their control and consequently they would have no right to demand or recover same from the mortgagee." (213 N.Y.S.2d 192, 194.)

(See also *Valerio v. College Point Savings Bank* (1965), 264 N.Y.S.2d 343 48 Misc. 2d 91.) We have reached similar conclusions. In *Sears v. First Federal Savings & Loan Association*, the court wrote:

> "When the payments were made, the borrowers retained no specific property rights in any of the sums thus paid. They retained no right to refund of any portion of any payment. The payment was unconditional except for a contractual right vested in the borrower to have the taxes and insurance paid to the extent of the total of the monthly payments. Plaintiff had no property rights beyond this in any payment after it was made." (1 Ill. App. 3d 621, 631.)

In *Durkee v. Franklin Savings Association* (1974), 17 Ill. App. 3d 978, 982, 309 N.E.2d 118, the Second District Appellate Court held:

> "Plaintiffs' mortgage agreement is devoid of any language that would allow them to receive back any or all of their monthly

partial tax and insurance payments after such sum is paid to defendant."

■■ In the instant case, the mortgage does not contain any language from which we can discern the mortgagors' intention to retain any rights in the funds which would be consistent with the creation of an express trust. The mortgagee is not impressed with any duty whatsoever to do anything with the money except to use it to pay the taxes, assessments, and hazard insurance premiums when they become due and owing. (See *Boyce v. National Commercial Bank & Trust Co.* (1964), 247 N.Y.S.2d 521, 41 Misc. 2d 1071.) Absent the showing of the plaintiffs' intention to place an affirmative duty upon defendant to care for the funds as a trustee, an express trust cannot be proven in this case under the complaint before us. Although plaintiffs call to our attention the various Federal and State laws, regulations, and guides which govern the operation of savings and loan associations, we have not been able to find any provision which states that a supervised lending institution such as Bell has the affirmative duty to act as a trustee with regard to these advanced funds. *Gibson v. First Federal Savings & Loan Association* (6th Cir. 1974), 504 F.2d 826, 829.

■■ Plaintiffs cite two cases from courts in other jurisdictions which have held, under similar facts, that the mortgagor has sufficiently put in issue the creation of an express trust. In both cases, *Buchanan v. Brentwood Federal Savings & Loan Association* (1974), 457 Pa. 135, 320 A.2d 117, and *Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 291 N.E.2d 609, the underlying theory was that funds deposited with a bank to be used for a special purpose constitute trust funds.

"Where the mortgagor pays funds to a bank with an expressed purpose that the funds shall be used for a particular purpose, then the funds may be deemed to be held in trust." (362 Mass. 770, 777, 291 N.E.2d 609, 614; quoted in *Buchanan,* 457 Pa. 135, 147, 320 A.2d 117, 124.)

Illinois courts have consistently held that the relationship between the parties in a case of this type arises when the mortgage agreement is entered into, and not when the mortgagor makes his first payment to the mortgagee. The court in *Durkee v. Franklin Savings Association* (1974), 17 Ill. App. 3d 978, 981-82, discussing Illinois cases on deposits for a special purpose, wrote:

"Both cases involve true deposit relationships—a contractual relationship between the depositor and the depositary bank which arises from the *delivery* of money by the depositor into the possession of the bank. 10 Am. Jur. 2d *Banks,* sec. 337.

The contractual relationship between plaintiffs and defendant

Franklin Savings Association, however, did not arise upon the delivery of the first monthly real estate and insurance premium payments to defendant. Rather, the contractual relationship between plaintiffs and defendant arose upon plaintiffs' execution of the mortgage agreement wherein they promised 'to pay' the required monthly amounts to defendant."

In *Oddo v. Western Savings & Loan Association* (1974), 17 Ill. App. 3d 276 (abstract opinion), we ruled that the prepayments were not deposits in a legal sense. The cases cited by plaintiffs are contrary to Illinois law in this regard, and are not authority for the proposition that plaintiffs herein intended to create an express trust.

Accordingly, the trial court did not err in dismissing that portion of plaintiffs' complaint which alleged the creation of an express trust as to the funds held by defendant.

■■ In the alternative, plaintiffs' complaint prays for the imposition of a constructive trust upon Bell's earnings on the advance payments. It is alleged that defendant fraudulently converted the earnings for its own use and commingled the earnings with its general funds. Plaintiffs conclude that defendant was unjustly enriched and should be declared a constructive trustee of the earnings.

Constructive trusts are divided into two general classes: "one where actual fraud is considered as an equitable ground for raising the trust, and the other where there is a confidential relationship and the subsequent abuse of the confidence reposed." (*Dial v. Dial* (1959), 17 Ill. 2d 537, 162 N.E.2d 404, 406.) The complaint at bar alleges a bare fraudulent conversion of earnings, but does not specifically allege facts to show how the fraud was perpetrated. The defendant openly admits that it treats the earnings as its own, contending that it has a right to do so. At best, there is a dispute as to the competing interests in the earnings; we fail to see the fraud which must be clearly alleged to state a cause of action for the imposition of a constructive trust.

■■ The other type of constructive trust arises when a confidential relationship is abused. Plaintiffs call our attention to the decision in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398. In *Janes*, the mortgagors-borrowers authorized their mortgagee-lender to order a title insurance policy for them and to pay for the policy from the loan proceeds. The mortgagee purchased the policy and charged the mortgagors, but also received a 10% discount or rebate from the title insurance company which the mortgagors sought to recover under a constructive trust theory. The language utilized by our supreme court deserves careful attention:

"The appellate court then considered the possibility of the existence and breach of a trust, but rejected any right to recover on

such a theory on the ground that 'the relationship of mortgagor and mortgagee does not of itself show the existence of a confidential or fiduciary relationship.' More is involved here, however, than a relationship of mortgagor and mortgagee 'of itself,' and in our opinion count I of the complaint alleges a fiduciary relationship. The loan statement attached to the complaint is an accounting by Berwyn for its disposition of the money which the plaintiffs had borrowed from it. The statement recites the amount borrowed by the plaintiffs, and it contains their authorization to Berwyn to make specific dispositions of that sum of money. Any disposition of those funds for a purpose other than as authorized by the plaintiffs was improper and a violation by Berwyn of the duty which it owed to the plaintiffs." (57 Ill. 2d 398, 408-09.)

The plaintiffs herein submit that *Janes* is direct authority for the conclusion than Bell is their fiduciary because more is involved than a mortgagor-mortgagee relationship. A close examination of *Janes* along traditional legal lines of analysis shows that the cases are distinguishable. The usual test for the existence of a fiduciary relationship is whether a special trust or confidence has been reposed by an innocent party. (*Tarpoff v. Karandjeff* (1964), 51 Ill. App. 2d 454, 201 N.E.2d 549.) In *Janes,* the particular arrangement of authorizing disbursement for the cost of a title insurance policy necessarily involved confidence reposed in the lender-mortgagee, the confidence that the lender would not pay out more than was authorized. By the lender paying out the stated policy cost knowing full well that the actual cost was lower because of the rebate, the relationship of confidence with respect to the payouts was abused. In our case, the plaintiffs' complaint does not allege any facts showing a relationship of special trust or confidence as in *Janes*. To assert on appeal only that there is more than the usual mortgagor-mortgagee relationship is to disregard the well-known rules pertaining to the establishment of fiduciary relationships.

■■ In light of our ruling, we need not consider the class action aspects of this case. *Zelickman v. Bell Federal Savings & Loan Association* (1973), 13 Ill. App. 3d 578, 301 N.E.2d 47.

For the above-mentioned reasons, the judgment of the circuit court of Cook County dismissing plaintiffs' complaint for failure to state a cause of action is affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.